UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **KENNETH MEGGE,**<br>Plaintiff,<br>vs.<br>**MENARD, INC.,**<br>Defendant. | **2:24-CV-12206-TGB-CI**<br>HON. TERRENCE G. BERG<br>**ORDER GRANTING DEFENDANT MENARD, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 12)** |

Plaintiff Kenneth Megge and his wife were shopping at the Chesterfield Menards store, operated by Defendant Menard, Inc., when he lifted a box containing a nine-cube storage shelf off a ground-level shelf in the store and, as he was attempting to put the box in a cart, the contents of the box unexpectedly fell out of the bottom of the box and landed on his foot, injuring it. Megge brings this premises liability lawsuit against Menard for negligently maintaining a dangerous condition in its store and not exercising due care toward him as a customer. Now before the Court is Defendant Menard's Motion for Summary Judgment, ECF No. 12, which has been fully briefed. ECF Nos. 15, 17. Upon review of the parties' filings, the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the present motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, Menard's motion will be **GRANTED**

## I. BACKGROUND

In the early afternoon of January 6, 2024, Plaintiff Kenneth Megge and his wife Sophie went to the Chesterfield Menards store to purchase a set of cubicle shelves for their basement. Deposition of Kenneth Megge at 37, ECF No. 12-3, PageID.161. Megge entered the store unassisted, while his wife used a cane and, once inside the store, an electric scooter provided by Menards. Sophie Megge Deposition at 20–21, ECF No. 12-4, PageID.251–52. The Megges proceeded to the aisle where the cubicle shelves were stored and displayed. K. Megge Dep. at 43–44, ECF No. 12-3, PageID.167–68. The boxes with the nine-cube storage shelves that the Megges intended to purchase were stored on a ground-level shelf. *Id.* at 46, PageID.170. Megge pulled a box off the shelf and stood it up on its end on the floor. *Id.* at 53–54, 57, PageID.177–78, 181. At that time, neither Megge nor his wife observed any issues with the box such as ripped or torn cardboard or anything else that would lead either of them to believe that the box was unsecured or that the contents would come out of the box if picked up. *Id.* at 55–56, PageID.179–80; S. Megge Dep. at 25–26, ECF No. 12-4, PageID.256–57. After standing the box on its end, Megge went to lift the box into the cart. K. Megge Dep. at 57–58, ECF No. 12-3, PageID.181–82. He grabbed the box by the sides and had lifted it up about a foot or two when the bottom of the box allegedly dropped out and the contents of the box fell onto Megge's foot, injuring him. *Id.*

After the incident, another customer whose identity is unknown assisted Megge by placing a different box of the same cube organizer into the Megges' cart. *Id.* at 39, 64–65, PageID.163, 188–89. Megge did not touch or move the subject box after the incident. *Id.* at 68–69, PageID.192–93. He has no knowledge whether or not someone else moved the box between the incident and his later reporting of the incident to a Menards employee. *Id.* The Megges completed their purchase and left the store without telling anyone about the incident. *Id.* at 66, PageID.190. As they drove home, Megge testified that the pain in his foot increased until his wife suggested that they should turn around and report the incident to the store. *Id.* at 65–66, PageID.189–90.

The Megges returned to the store an estimated 15 minutes later. *Id.* at 67, PageID.191. Megge reported the incident to Joseph Champine, the Menard Front End Manager. Incident Report, ECF No. 12-5, PageID.287. After Megge explained what happened, Champine left the front desk and returned with the box involved in the incident on a cart. K. Megge Dep. at 68, ECF No. 12-3, PageID.192. Before placing it on the cart, Champine took photographs of the box where it had been left on the floor, as depicted below. ECF No. 12-5, PageID.289–90.




ECF No. 12-5, PageID.290.

At his deposition, Megge positively identified the box in the photos as the one involved in the incident. K. Megge Dep. at 48, ECF No. 12-3, PageID.172. He also confirmed that the box in the photos looked to be in the same condition as the box appeared to be in at the time of the incident. *Id*. As can be seen in the photograph, the bottom of the box is clearly torn open, and several planks of shelving are visible, protruding approximately one foot-length out of the opening.

After reporting the incident, Megge went to an urgent care center later that same day. He saw another doctor a few days later, who told

Megge he had "two cracks" in his foot. *Id.* at 72–75, PageID.196–99. The doctor told Megge he just needed to let the cracks heal. *Id.*

On or about July 10, 2024, Megge filed this action against Menard in the Macomb County Circuit Court, alleging Menard was negligent in causing his injuries. ECF No. 1-2. He asserted a premises liability claim. *Id.* Menard timely removed the case to federal court based on diversity jurisdiction. ECF No. 1.

After the close of discovery, Menard filed a motion for summary judgment, seeking dismissal of Megge's premises liability claim. ECF No. 12. Plaintiff filed a response in opposition, ECF No. 15, and Menard filed a reply in support of its motion. ECF No. 17.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude the grant of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried

its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). That is, the non-moving party must provide specific facts to rebut or cast doubt on the moving party's proffered facts. *Matsushita Elec. Indus.*, 475 U.S. at 586.

Summary judgment must be entered against a party who fails to establish the existence of an element essential to that party's case on "which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

## III. DISCUSSION

The Court will consider Megge's premises liability claim on two theories: a standard negligence theory and then a res ipsa loquitur theory, which Megge raised in his Response to Menard's motion.

### A. Premises Liability

To prevail on a standard premises liability claim, Megge must prove that (1) Menard owed him a duty, (2) it breached that duty, (3) the breach was the proximate cause of Megge's claimed injuries, and (4) he was damaged. *Kandil-Elsayed v. F&E Oil, Inc.*, 1 NW.3d 44, 51 (Mich. 2023);

*Lowrey v. LMPS & LMPJ, Inc.*, 890 N.W.2d 344, 348 (Mich. 2016); *see also Lapczynski v. Walmart Stores, Inc.*, 761 F. App'x 530, 534 (6th Cir. 2019). "Generally, an owner of land owes a duty to an invitee[1] to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Whitaker v. Meijer, Inc.*, No. 363242, 2024 WL 295264, at *1 (Mich. Ct. App. Jan. 25, 2024) (citation omitted). "A premises owner breaches its duty of care when it 'knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect.'" *Lowrey*, 890 N.W.2d at 348–49 (quoting *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012)). In other words, a plaintiff must prove that the defendant had actual or constructive notice of the alleged dangerous condition. *Id.* at 349; *Albitus v. Greektown Casino, LLC*, 984 N.W.2d 511, 515 (Mich. Ct. App. 2021) ("[A]ctual or constructive notice of the relevant dangerous condition is an essential element in establishing a premises liability claim."). "It is plaintiff's burden to establish a question of fact as to whether defendants had notice

---

1 "An 'invitee' is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make it safe for the invitee's reception." *Letvin v. Vill. at Grand Traverse Commons Condo. Ass'n*, No. 376558, — N.W.3d —, 2026 WL 2022927, at *3 (Mich. Ct. App. July 13, 2026) (quoting *Gabrielson v. Woods Condo. Ass'n, Inc.*, Nos. 364809, 364813, 2024 WL 56376, at *6 (Mich. Ct. App. Jan. 4, 2024)). "A person invited on the land for the owner's commercial purposes or pecuniary gain is an invitee[.]" *Id.*

of the condition." *Zoma v. MGM Grand Detroit, LLC*, No. 341149, 2019 WL 1371500, at *2 (Mich. Ct. App. Mar. 26, 2019) (citing *Lowrey*, 890 N.W.2d at 349.

The parties do not dispute that Megge was a business invitee and that Menard owed him "a duty to use reasonable care to protect [him] from unreasonable risks of harm posed by dangerous conditions." *See Hoffner*, 821 N.W.2d at 91. Menard breaches its duty to use reasonable care when it "knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Id.* at 94. Here, the record evidence suggests, and the parties appear to argue, that the dangerous or defective condition was the bottom-end closure of a box that was incapable of containing the weight of the box's contents when the box is lifted vertically, causing the entire weight of the contents to be borne by the end closure.[2] Menard argues that this Court should grant summary judgment in its favor as to Megge's premises liability claim because Megge fails to present evidence that Menard either created or

---

[2] Neither party argues or points to any evidence suggesting that the bottom-end closure of the box that failed had been damaged, previously opened, or tampered with in any matter that would affect its structural integrity. Indeed, Megge testified that he saw no conditions of the box that created safety concerns prior to the incident, and that nothing about the box indicated that it was unsecured or dangerous. K. Megge Dep. at 44, 54–56, ECF No. 12-3, PageID.168, 178–80.

had actual or constructive notice of the alleged defective condition of the box. ECF No. 12, PageID.111–14.

First, the Court agrees with Menard that there is no evidence in the record showing that Menard created or had actual notice of the condition of the box prior to the incident. Indeed, Megge does not contend in his Response that Menard had actual knowledge of the alleged defective condition of the box prior to the incident, *see* ECF No. 15, and the record evidence fails to demonstrate any such actual knowledge. Megge and his wife were the only known witnesses to the incident and both admitted that they had no evidence that Menard caused the box to be unsecured. K. Megge Dep. at 45, 63, ECF No. 12-3, PageID.169, 187; S. Megge Dep. at 30, ECF No. 12-4, PageID.261. Megge further testified that he does not have any knowledge that Menard knew that the box was unsecured prior to the incident, K. Megge Dep. at 60, ECF No. 12-3, PageID.184, and both Megge and his wife further testified that they were not aware of any prior complaints about the box to Menard prior to the incident. K. Megge Dep. at 59–60, 62–63, ECF No. 12-3, PageID.106–07, 186–87; S. Megge Dep. at 26, 29 ECF No. 12-4, PageID.257, 260. Accordingly, no evidence has been presented showing that Menard created or had actual notice of the alleged defective condition of the box prior to the incident.

Without actual notice, second, Megge must show that Menard had constructive notice of the alleged defective condition of the box. A defendant has constructive notice if "the hazard was of such a character,

or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Lowrey*, 890 N.W.2d at 350; *Banks v. Exxon Mobil Corp.*, 725 N.W.2d 455 (Mich. 2007) ("Constructive notice may arise not only from the passage of time itself, but also from the type of condition involved, or from a combination of the two elements."). "Where the possessor is the one who created the condition, knowledge of the condition is imputed to the possessor, but where the condition is created by a third person, there is a factual question regarding whether the possessor should have reasonably discovered the condition." *Pugno v. Blue Harvest Farms, LLC*, 930 N.W.2d 393, 404 (Mich. Ct. App. 2018). "The burden of presenting evidence of notice regarding dangerous conditions always rests with the plaintiff." *Saenz v. Kohl's Dep't Stores, Inc.*, 834 F. App'x 153, 157 (6th Cir. 2020) (end citation omitted). The defendant, "by contrast, has no burden to show 'that it did not have … constructive notice of the condition,'" *id.*, and it "is not required to go beyond showing the insufficiency of plaintiff's evidence." *Lowrey*, 890 N.W.2d at 349.

Menard argues that Megge has proffered no evidence of either the character or duration of the alleged issue with the box sufficient to impute constructive notice on Menard. Megge testified that he did not have any safety concerns regarding the condition of the box prior to the incident, and that nothing about the box indicated that it was unsecured or dangerous prior to the incident. K. Megge Dep. at 44, 54–56, ECF No.

12-3, PageID.168, 178–80. He testified that he had no personal knowledge of the box being unsecured prior to the incident, and that he would have to speculate as to what could have caused the box to become unsecured or what caused the contents of the box to fall out. *Id.* at 56–57, 59–60, PageID.180–81, 183–84. He testified that the only "evidence" he has that there was an issue with the box is the fact that the incident occurred. *Id.* at 60, PageID.184.

Megge's wife Sophie similarly testified that she did not notice any issues with the box prior to the incident and that she had no safety concerns with respect to the box prior to the incident. S. Megge Dep. at 22, 24–25, ECF No. 12-4, PageID.253, 255–56. She did not observe the box to have been opened and did not see any ripped or torn cardboard prior to the incident. *Id.* at 25, PageID.256. She admitted that her only knowledge of the box being unsecured is the fact that the incident occurred. *Id.* at 26, PageID.257. She testified that the box "fell apart," but does not know why or how that happened. *Id.* at 28–29, PageID.259–60. And both Megge and his wife expressly testified that they have no knowledge of how long the box had been in an allegedly defective condition prior to the incident. K. Megge Dep. at 56, PageID.180 (stating he had "No, no, none whatsoever"); S. Megge Dep. at 26, PageID.257.

Based on this evidence, a reasonable jury reviewing the record in the light most favorable to Megge would look in vain for any proof that that the allegedly defective condition of the box was so obvious, or that it

existed for such an extended period of time, that Menard should have discovered it. *See Saad v. Menards, Inc.*, No. 22-cv-11833, 2024 WL 1349306, at *12 (E.D. Mich. Mar. 29, 2024) (Levy, J.) (collecting cases holding that without record evidence tending to show how long the condition had existed, a jury could not conclude that the defendant should have known of it). The jury instead would be left to speculate about the character and duration of the box prior to the incident, but a "jury [cannot be] left to speculate as to when a [hazardous condition] occurred to determine whether defendant's employees had constructive notice." *Misko v. Speedway, LLC*, No. 16-cv-13360, 2018 WL 2431638, at *6 (E.D. Mich. May 29, 2018) (Borman, J.) (citation modified).

Megge argues in his Response brief that the photos of the box after the incident "depict separation at the bottom, consistent with pre-existing weakness in sealing, cardboard integrity, or packaging," and that a "reasonable jury could infer that such a latent defect (inadequate taping, cardboard integrity, weakened base, or manufacturing/packaging flaws) was discoverable upon reasonable visual or tactile inspection during stocking or routine checks." ECF No. 15, PageID.444. However, Megge's contentions regarding the possible cause of the failure of the box—inadequate taping, a weakened base, or a manufacturing/packaging flaw—are nothing more than pure conjecture and speculation. He testified at his deposition that he did not observe any ripped or torn cardboard on the box or tape hanging off the box prior to the incident,

that he did not inspect the box after the incident, and that he "ha[s] no idea" what caused the contents to fall out of the box and "can only guess." K. Megge Dep. at 56, 58–60, ECF No. 12-3, PageID.180, 182–84 "[A] plaintiff cannot only present one theory of the alleged circumstances that caused the accident if he is unable to sufficiently eliminate other theories 'to take the case out of the realm of conjecture.'" *Ramadan v. Home Depot, Inc.*, 504 F. Supp. 3d 695, 708 (E.D. Mich. 2020) (Davis, J.) (quoting *Guthre v. Lowe's Home Ctrs., Inc.*, 204 F. App'x 524, 527 (6th Cir. 2006). Megge's speculation as to the possible cause of the alleged failure of the box cannot create a triable issue of fact for the jury to decide as to whether Menard had constructive knowledge of that cause.

Moreover, courts have rejected similar arguments that there was "a jury issue regarding whether reasonable inspection by [the defendant] … 'should' have [led it to] discover[ ] the condition" because "the Michigan Supreme Court 'has never required a defendant to present evidence of a routine or reasonable inspection … to prove a premises owner's lack of constructive notice of a dangerous condition of the property.'" *Grimwood v. Am. Airlines, Inc.*, 323 F. Supp. 3d 928, 933–34 (E.D. Mich. 2018) (Michelson, J.) (quoting *Lowrey*, 890 N.W.2d at 349–50); *Kassab v. Target Corp.*, No. 16-12788, 2017 WL 2880086, at *5–6 (E.D. Mich. July 6, 2017) (Edmunds, J.) (plaintiff's theory of constructive notice—that if the defendant had "conducted reasonably-timed inspections of the area where Plaintiff fell, it would have discovered the unsafe condition that

purportedly caused th[e] fall"—was "legally flawed" because the reasoning in *Lowrey* "applies with full force here") (citation modified); *Easton v. Meijer, Inc.*, No. 363597, 2023 WL 8106830, at *2 (Mich. Ct. App. Nov. 21, 2023) ("Meijer had no duty to establish that it performed a reasonable inspection of the grocery aisles on the morning of Easton's fall" to prove a lack of constructive notice).

Moreover, Megge's argument regarding inspections is "factually flawed" in light of his failure to provide evidence that shows how long the box had been in an allegedly defective condition, because without evidence regarding the duration of the alleged unsafe condition, "the Court fails to see how it can be said that a 'reasonably timed' inspection would have uncovered the condition." *See Saad*, 2024 WL 1349306, at *13 (quoting *Kassab*, 2017 WL 2880086, at *5). "Even assuming arguendo that defendant had a legal duty to thoroughly inspect the floors [or merchandise] very often, plaintiff's concession that there was no way to know that the hazard had been present for even a full minute is fatal to h[is] claim." *Whitaker*, 2024 WL 295264, at *3.

Accordingly, Plaintiff has failed to provide any evidence regarding the character *or* the duration of the alleged defect sufficient to create an issue of fact as to whether Menard had constructive knowledge of that alleged defect. And as the record does not provide direct evidence regarding the nature of the alleged defective condition of the box, Megge cannot survive summary judgment on his premises liability claim.

**B. Res Ipsa Loquitur**

Megge alternatively argues in his Response brief that the doctrine of res ipsa loquitur permits an inference of negligence in this case, including an inference of constructive notice, that precludes a grant of summary judgment. ECF No. 15, PageID.445–47.

Res ipsa loquitur "is not an independent cause of action." *Pugno*, 930 N.W.2d at 404. Rather, under this doctrine, the court may infer negligence when a plaintiff cannot prove the occurrence of a negligent act. *Id.* at 405. "Ultimately, res ipsa loquitur is 'merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it.'" *Id.* (citing Restatement, § 328D, comment *b*, p. 157). The doctrine can apply to premises liability claims in Michigan. *Id.*

For res ipsa loquitur to apply,

> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
>
> (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;
>
> (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff; and
>
> (4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.

*Id.* at 404. In addition, a "plaintiff must also produce some evidence of wrongdoing beyond the mere happening of the event." *Id.* The Court finds here that Megge has presented insufficient evidence to proceed under the doctrine of res ipsa loquitur theory of recovery to survive summary judgment.

Menard argues that Megge cannot meet the second element of the doctrine—that the "instrumentality" was in Menard's "exclusive control"—and also cannot meet the additional requirement of providing evidence of wrongdoing by Menard beyond the mere occurrence of the incident. ECF No. 17, PageID.573–75. The Court agrees.

"Element two [of res ipsa loquitur] requires a plaintiff to show that the agency or instrumentality that caused the accident was in the exclusive control of the defendant." *Ramadan*, 504 F. Supp. 3d at 711 (citing *Pugno*, 930 N.W.2d at 404). Megge contends that the box of shelves at issue was in the direct and exclusive control of Menard because its employees placed the item at the designated location for purchase by Menard's patrons, and Menard asserted in discovery responses that "[the product] had been shelved without incident. It was never purchased or returned prior to the subject incident as far as [Menard] was aware." ECF No. 15, PageID.446 (citing Menard Discovery Responses at PageID.563).

Menard responds to the contrary that the box at issue, which was displayed on an accessible shelf in an admittedly "high-traffic aisle," was

subject to the possible control of others besides Menard's employees. ECF No. 17, PageID.573–74.

A sister court in this District noted that:

> Many cases applying Michigan law support finding that merchandise that is displayed in stores is not within the exclusive control of the defendant because customers also handle displayed merchandise. *See Valdes v. Menard, Inc.*, No. 344073, 2019 WL 6340263, at *4 (Mich. Ct. App. Nov. 26, 2019) (holding a box of tiles on display was not within the exclusive control of defendant); *Boyer v. Target Corp.*, No 251790, 2005 WL 602563, at *2 (Mich. Ct. App. Mar. 15, 2005) (holding that display fireplace was not in the exclusive control of defendant); *Vance v. TJX Companies, Inc.*, No. 10-13510, 2011 WL 3840341, at *5 (E.D. Mich. Aug. 30, 2011) (holding that a wall hanging was not in the exclusive control of defendant).

*Dajlani v. Wal-Mart Stores East, LP*, No. 20-12983, 2021 WL 5303925, at *6 (E.D. Mich. Nov. 15, 2021) (Michelson, J.). Courts have distinguished between merchandise displayed in stores, such as the box in this case, which is handled, relocated, and taken by customers, and thus is not within the exclusive control of the store, and fixtures installed by the store, which are generally held to be within the store's exclusive control. *Compare, e.g., Ramadan*, 504 F. Supp. 3d at 713–14 (finding element two met because the store's employees installed the brackets that held up the raceway channels, and thus they were fixtures that a jury could find were in the store's exclusive control); *Correia-Massolo v. Bed Bath & Beyond, Inc.*, No. 08-14857, 2010 WL 3842352, at *5 (E.D. Mich. Sept. 27, 2010)

(Tarnow, J.) (a shelf holding up a fan collapsed and the court found that even if the fan that fell was not in the defendant's exclusive control, the defendant had installed the shelves as fixtures in the store and thus a jury could find that the shelf was in the exclusive control of the defendant); *with Saad*, 2024 WL 1349306, at *15–16 ("Given that one or more customers could have handled the black edging before it fell, Plaintiff does not establish that the black edging was in Menard's exclusive control. A jury could not reasonably conclude that element two of *res ipsa loquitur* is met."); *Valdes*, 2019 WL 6340263, at *4 ("Merchandise set out on display in a retail store is subject to being handled by customers in the store," including by the plaintiff, and thus is not in the exclusive control of the store); *Rippy v. Home Depot U.S.A., Inc.*, No. 09-CV-12043, 2010 WL 891154, at *3 n.6 (E.D. Mich. Mar. 10, 2010) (Rosen, C.J.) (finding stacked boxes of tiles were not within the store's exclusive control, as "a customer could have easily left boxes in disarray before an associate had an opportunity to walk through and tend to the display.").

Accordingly, as was the case in *Saad*, *Valdes*, *Boyer*, *Vance*, and *Rippy,* res ipsa loquitur does not apply here due to Megge's failure to point to any evidence showing that Menard exercised exclusive control over the box of shelving at issue.

Menard further argues that Megge's res ipsa loquitur claim fails because Megge cannot produce evidence that there was "wrongdoing" by

Menard, beyond the mere occurrence of the incident. *Pugno*, 930 N.W.2d at 404. In this contention, Menard is correct. Megge offers only speculation in his Response brief as to how the box was left in a defective condition, theorizing that there could be a defect in sealing, cardboard integrity, or packaging. *See* ECF No. 15, PageID.440, 444. Megge admits in his deposition that he has no evidence that Menard knew the box was somehow unsafe or defective prior to the incident, no evidence that the box was not properly constructed, no knowledge as to whether the quality of the construction of the box was the cause of the incident, and the only thing he can point to as evidence that the box was somehow defective was the fact that the shelving fell out of its bottom. Megge Dep. at 60, 62, ECF No. 12-3, PageID.184, 186. But this does not constitute evidence of wrongdoing *by Menard* "beyond the occurrence of the accident." *See Ramadan*, 504 F. Supp. 3d at 716. "A plaintiff may not simply claim ignorance of the impetus of an accident, make baseless guesses at why the accident happened, and still expect to prevail on a negligence claim." *Saad*, 2024 WL 1349306, at *17 (quoting *Boyer*, 2005 WL 602563, at *2).

Because Megge has failed to present a genuine issue of fact that the box at issue was in Menard's exclusive control and because he does not provide proof of wrongdoing by Menard, res ipsa loquitur is unavailable as a theory supporting liability in this case.

## IV. CONCLUSION

For the reasons stated above, Menard's Motion for Summary Judgment, ECF No. 12, is **GRANTED**, and Plaintiff Kenneth Megge's claims are **DISMISSED WITH PREJUDICE**,

This is a final order that closes the case.

**IT IS SO ORDERED.**

Dated: September 24, 2026 /s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE